## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ELFIGO GRAHAM and
LISA GRAHAM,

       Plaintiffs,

vs.                                                                          No. CIV 14-0745 JB/WPL

XOCHIL TRONCOSO and
USAA CASUALTY INSURANCE,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Remand to State Court, filed September 3, 2014 (Doc. 5)("Motion"). The Court held a hearing on November 20, 2014. The primary issues are: (i) whether Plaintiffs Elfigo Graham and Lisa Graham, New Mexico citizens, have adequately pled a cause of action against Defendant Xochil Troncoso, also a New Mexico citizen; and (ii) whether the Grahams fraudulently joined Troncoso in this case. Because the Grahams have sufficiently alleged a valid cause of action against Troncoso, and because there is not complete diversity, the Court will grant the Motion, remand the case to state court, and award the Grahams attorney fees and costs.

## <u>PROCEDURAL BACKGROUND</u>

On July 24, 2014, the Grahams filed this lawsuit in state court. <u>See</u> Complaint for Declaratory Judgment and to Recover Uninsured Motorist Benefits for Personal Injuries, filed in state court on July 24, 2014, filed in federal court on August 20, 2014 (Doc. 1-1)("Complaint"). The Grahams allege that they are New Mexico residents, that Troncoso is a New Mexico resident, and that Defendant USAA Casualty Insurance is a foreign corporation. <u>See</u> Complaint

¶¶ 1-4, at 1-2.  In a section titled "General Allegations," the Grahams allege that Troncoso "negligently and carelessly operated a 1998 Ford in such a manner that it collided with the [Grahams'] 2012 Chevy."  Complaint ¶ 6, at 2.  The Grahams allege that Troncoso's acts were "the direct and proximate cause of the subject collision and Plaintiffs' resulting injuries and damages," and that "Troncoso is to be considered negligent *per se* and strictly liable to the Plaintiffs."  Complaint ¶¶ 7-8, at 2.  The Grahams allege that "Troncoso is an uninsured motorist as defined by the policies of insurance issued by USAA" and that, at the time of the accident, USAA Casualty insured the Grahams' 2012 Chevy.  Complaint ¶¶ 9-10, at 2.  The Grahams allege that USAA Casualty contends that it rejected the Grahams' uninsured motorist coverage for the 2012 Chevy.  See Complaint ¶ 10, at 2.

In the Complaint, the Grahams list specific claims against USAA Casualty, including: (i) declaratory judgment "that underinsured motorist coverage exists for the Plaintiffs on all policies issued to Mr. and Mrs. Graham by USAA"; (ii) insurance bad faith; and (iii) violation of the Unfair Insurance Practices Act, N.M. Stat. Ann. § 59A-16-20.  Complaint ¶¶ 12-29, at 3-7.  The Grahams request, among other things, "judgment as against Defendant Troncoso . . . including both compensatory and punitive damage."  Complaint ¶ (b), at 7.

On August 20, 2014, USAA Casualty removed the case to federal court.  See Notice of Removal, filed August 20, 2014 (Doc. 1)("Notice of Removal").  USAA Casualty contends that, while the Grahams and Troncoso are New Mexico residents, Troncoso "has been fraudulently joined in this action in order to defeat diversity jurisdiction."  Notice of Removal at 2.  It asserts that the Grahams "have asserted *no causes of action whatsoever* against Defendant Troncoso in their complaint."  Notice of Removal at 3 (emphasis in original).  USAA Casualty argues that, because the Grahams have fraudulently joined Troncoso, the Court has diversity jurisdiction

pursuant to 28 U.S.C. § 1332, because the Grahams are New Mexico residents and USAA Casualty is a Texas corporation with its principal place of business in Texas.  See Notice of Removal at 3-4.

On September 3, 2014, the Grahams moved for the Court to issue an order, remanding the case to the Third Judicial District Court, State of New Mexico.  See Motion at 1.  The Grahams argue that Troncoso ran a red light and crashed into their car, which resulted in personal injuries.  See Motion at 1.  They contend that the Complaint alleges that "Troncoso negligently collided with Plaintiffs' car causing Plaintiffs' injuries and damages," and that the "Complaint requests that the Court enter a judgment against Defendant Troncoso."  Motion at 1. The Grahams assert that the Complaint also alleges that "USAA inappropriately handled Plaintiffs' uninsured claim and seeks a declaration of the Plaintiffs' rights under the USAA policy."  Motion at 1.  They also contend that they properly served both Troncoso and USAA. See Motion at 2.

The Grahams argue that, because they and Troncoso are New Mexico residents, the Court lacks diversity jurisdiction and must remand the case.  See Motion at 2.  The Grahams contend that Troncoso was not fraudulently joined and that the "Complaint clearly includes notice of a negligent claim against Defendant Troncoso."  Motion at 2.  They assert that the removing party asserting fraudulent joinder "must demonstrate that there is no possibility that the plaintiff would be able to establish a viable cause of action against the joined party in state court."  Motion at 2 (citing Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000); Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999); Montoya v. Apfel, No. 99-2156, 211 F.3d 1278 (10th Cir. May 8, 2000)(unpublished)(table opinion)).  The Grahams contend that the Court must determine whether they have any possibility of recovery against Troncoso and, if they have a possible

viable claim, the Court must remand the case.  See Motion at 3 (citing Green v. Amerada Hess Corp., 707 F.2d 201, 207 (5th Cir. 1983)).  They maintain that, because the Complaint clearly states that Troncoso caused the accident and clearly states a viable claim against him, Troncoso was not fraudulently joined.  See Motion at 4.

USAA Casualty responds by arguing that the Complaint does not assert any claims or causes of action against anyone other than USAA Casualty.  See Response to Plaintiffs' Motion to Remand to State Court, filed September 19, 2014 (Doc. 8)("Response").  USAA Casualty contends that, because "no count, claim, or cause of action is brought against Troncoso, a resident of New Mexico, she has been improperly joined in the action in an apparent attempt to prevent USSA . . . from its statutory right to have a federal court hear the case."  Response at 1. It maintains that the Grahams named a non-diverse party solely for the purpose of defeating diversity jurisdiction.  See Response at 2.  USAA Casualty asserts that this case is similar to Lloyd v. Travelers Property Casualty Insurance Company, 699 F. Supp. 2d 812 (E.D. Va. 2010)(Ellis, J.).  See Response at 3.  There, according to USAA Casualty, the plaintiff was injured in a car accident with an underinsured driver and brought a declaratory judgment action against the plaintiff's insurer.  See Response at 3.  USAA Casualty asserts that the plaintiff named the other driver as a defendant, but did not assert any claims against him.  See Response at 3.  USAA Casualty contends that, after the defendant removed the case to federal court, the district court judge refused to remand, because the plaintiff did not bring any claims against the other driver, who "had *no stake in the outcome* of the coverage dispute."  Response at 3 (emphasis in original).  USAA Casualty contends that, because the tortious driver had no stake in the outcome of the case, his citizenship could not be properly considered for diversity purposes. See Response at 4.  USAA Casualty argues that, because the Grahams have asserted no cause of

action against Troncoso, there is no reason for her to remain in this case.  <u>See</u> Response at 5.  It contends that, even though it may later subrogate[1] against Troncoso, Troncoso's potential exposure in a separate lawsuit does not mean that she has a stake in this one.  <u>See</u> Response at 5, n.1.

USAA Casualty maintains that the Grahams' prayer for relief, which requests a judgment against Troncoso, is insufficient to assert a claim against her.  <u>See</u> Response at 5.  It asserts that <u>Trigo v. Travelers Commercial Insurance Co.</u>, No. CIV 10-0028, 2010 WL 3521759 (W.D. Va. Sept. 7, 2010)(Moon, J.), considered and rejected the same argument.  <u>See</u> Response at 5.  There, according to USAA Casualty, the plaintiff sued his insurer and the other driver in an action seeking declaratory judgment for uninsured motorist coverage.  <u>See</u> Response at 5.  USAA Casualty contends that the plaintiff did not assert any claims against the other driver, but sought relief "against the defendants."  Response at 5.  USAA Casualty argues that the district judge found that, because there were no claims against the other driver, the prayer for relief was insufficient and the other driver did not any interest in the case.  <u>See</u> Response at 5.  USAA Casualty asserts that the district judge refused to remand the case.  <u>See</u> Response at 5.  It argues that each claim concerns an insurance dispute between it and the Grahams, and that the prayer for relief is insufficient to create a cause of action against Troncoso.  <u>See</u> Response at 5-6.  USAA Casualty distinguishes the cases to which the Grahams cite by arguing that they concern situations in which the plaintiffs asserted causes of action against a non-diverse party and that, here, there is no cause of action.  <u>See</u> Response at 6-7.

---

[1]In New Mexico, "when an insurer pays the claim of its insured under the insured's policy, it 'is deemed to be subrogated by operation of law to recovery of its payments against the person who caused the loss.'"  <u>Amica Mut. Ins. Co. v. Maloney</u>, 1995-NMSC-059, ¶ 7, 903 P.2d 834, 838 (quoting <u>Safeco Ins. Co. v. United States Fidelity & Guar. Co.</u>, 1984-NMSC-045, ¶ 3, 679 P.2d 816, 817).

The Grahams reply by arguing that USAA Casualty grossly misrepresents the Complaint and "blatantly ignores" their claim against Troncoso.  Plaintiff's [sic] Reply for Motion to Remand to State Court at 1, filed October 3, 2014 (Doc. 11)("Reply").  They argue that the Complaint clearly meets New Mexico's notice requirement.  See Reply at 1.  The Grahams contend that, because they must show that Troncoso drove negligently to establish a claim against USAA Casualty, they could not have fraudulently joined Troncoso.  See Reply at 1-2.  They maintain that they are seeking damages from Troncoso.  See Reply at 2.  The Grahams argue that USAA Casualty has not demonstrated that they "have no possibility of establishing a viable cause of action against Troncoso in state court and thus failed to meet its burden in alleging that Troncoso was fraudulently joined."  Reply at 2.

The Court held a hearing on November 20, 2014.  See Transcript of Hearing (taken Nov. 20, 2014)("Tr.").[2]  The Court asked the Grahams to refer it to the paragraphs in the Complaint in which they allege a claim against Troncoso.  See Tr. at 14:20-24 (Court).  The Plaintiffs referred the Court to paragraphs 3, 6, and 7, and to the prayer.  See Tr. at 15:4-23 (Williams).  They admitted that the headings in their Complaint could have been clearer, but that the allegations against Troncoso are still clearly pled.  See Tr. at 16:3-11 (Williams, Court).  The Grahams repeated many of their arguments from the Motion, including that they properly alleged a claim against Troncoso and that the Court lacks diversity jurisdiction.  See Tr. at 16:17-17:3 (Williams).  They contended that the Supreme Court of New Mexico merely requires a complaint to give the other party notice of the claims against it and that the Complaint satisfies this notice standard.  See Tr. at 22:25-23:21 (Williams).  The Grahams argued that, if they filed suit against Troncoso, received a judgment, and then filed suit against USAA Casualty, USAA

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

Casualty would argue that the judgment would not be valid against it, because it did not have a chance to litigate in the case against Troncoso.  See Tr. at 23:22-24:12 (Williams, Court).

USAA Casualty largely repeated its arguments from the Response, including that the dispute is between the Grahams and it, that there is no cause of action alleged against Troncoso, and that Troncoso is a nominal party.  See Tr. at 17:10-20:4 (McCarthy Apodaca).  USAA Casualty argued that the Grahams are required to prove that Troncoso was negligent to prevail against USAA Casualty and that the Grahams are not seeking a judgment against her.  See Tr. at 20:21-21:13 (McCarthy Apodaca).  USAA Casualty contended that the Complaint does not allege a viable claim against Troncoso that would satisfy New Mexico's pleading standards and that the Complaint is "virtually identical" to the one that the district judge considered in Trigo v. Travelers Commercial Insurance Co.  Tr. at 21:20-22:18 (McCarthy Apodaca)(citing Trigo v. Travelers Commercial Insurance Co.).

The Court informed the parties that it thought the Complaint was sufficient to allege a negligence claim against Troncoso under both New Mexico and federal law.  See Tr. at 25:14-25 (Court).  It also informed the parties that it did not think Troncoso was fraudulently joined and that it was inclined to grant the Motion and remand the case to state court.  See Tr. at 25:1-26:11 (Court).

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"[3]  Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012

_____

[3]The Constitution of the United States of America permits -- but does not mandate -- Congress to authorize an even broader scope of federal subject-matter jurisdiction than Congress has chosen to enact: "The judicial power shall extend to all cases, in law and

WL 3860748, at *12 (D.N.M. Aug. 27, 2012)(Browning, J.)(citing 28 U.S.C. § 1332(a)).  As the

Court has previously explained, "[t]he Supreme Court of the United States has described this

---

equity, . . . between citizens of different states."  U.S. Const. art. III, § 2, cl. 1.  This clause permits federal jurisdiction: (i) in cases with minimum diversity -- those in which any one party is a citizen of a different state than any opposing party -- in addition to cases with complete diversity; and (ii) in cases in which the amount in controversy is below the statutory amount-in-controversy requirement.  See State Farm Fire & Cas. v. Tashire, 386 U.S. 523 (1967).

> For the federal courts to have jurisdiction over a matter, however, jurisdiction must be both constitutionally empowered and congressionally authorized.  As the Honorable John J. Sirica, then-Chief United States District Judge for the District of Columbia, put it:

> > For the federal courts, jurisdiction is not automatic and cannot be presumed. Thus, the presumption in each instance is that a federal court lacks jurisdiction until it can be shown that a specific grant of jurisdiction applies.  Federal courts may exercise only that judicial power provided by the Constitution in Article III and conferred by Congress.  All other judicial power or jurisdiction is reserved to the states.  And although plaintiffs may urge otherwise, it seems settled that federal courts may assume only that portion of the Article III judicial power which Congress, by statute, entrusts to them.  Simply stated, Congress may impart as much or as little of the judicial power as it deems appropriate and the Judiciary may not thereafter on its own motion recur to the Article III storehouse for additional jurisdiction.  When it comes to jurisdiction of the federal courts, truly, to paraphrase the scripture, the Congress giveth, and the Congress taketh away.

Senate Select Comm. on Pres. Campaign Activities v. Nixon, 366 F. Supp. 51, 55 (D.D.C. 1973)(footnotes omitted).  The complete-diversity and amount-in-controversy requirements are two ways in which Congress has authorized a narrower scope of subject-matter jurisdiction than the full measure that the Constitution permits.  Congress has similarly narrowed federal-question jurisdiction.  Congress may authorize federal "arising under" jurisdiction over all cases in which "the constitution[] forms an ingredient of the original cause" of action.  U.S. Const. art. III, § 2, cl. 1 ("The judicial power shall extend to all cases, in law and equity, arising under this Constitution . . . .").

> > We think, then, that when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or of law may be involved in it.

Osborn v. Bank of U.S., 22 U.S. 738, 822 (1824)(Marshal, C.J.).  The federal-question jurisdiction statute, however, requires that a substantial, actually disputed question of federal law be present on the face of the well-pleaded complaint, and that its resolution be necessary to the disposition of the claim over which jurisdiction is being asserted.  See 28 U.S.C. § 1331; Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908).

statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507 JB/KBM, 2012 WL 1132374, at *15 (D.N.M. Mar. 19, 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956). The Court will discuss the two requirements in turn.

### 1. Diversity of Citizenship.

For diversity jurisdiction purposes, a person's domicile determines citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)(holding that diversity jurisdiction is assessed as of the time at which the suit is filed). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp.,

2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).  A corporation, on the other hand, is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)).

    **2.**    **Amount in Controversy.**

The amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold.  Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. Mar. 30, 2010)(Browning, J.).  If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims.  See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 WL 1608884, at *18.  Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct."  Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens 135 S. Ct. 547 (2014).  Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated.  See 14AA Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Vikram D. Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman, & Catherine T. Struve, Federal Practice and Procedure, Jurisdiction § 3704 (4th ed.).  While the rules on aggregation sound complicated, they

are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant.   The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence.  See McPhail v. Deere & Co., 529 F.3d at 953.  In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]."  McPhail v. Deere & Co., 529 F.3d at 955.  The United States Court of Appeals for the Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court.  McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play."  McPhail v. Deere & Co., 529 F.3d at 955.

The Supreme Court of the United States of America recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  See Dart Cherokee Basin Operating Co. v. Owen, 135 S. Ct. 547, 554 (2014).  The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is

satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation."

Dart Cherokee Basin Operating Co. v. Owen,. 135 S. Ct. at 554.

## LAW REGARDING REMOVAL, REMAND, FRAUDULENT JOINDER, PROCEDURAL MISJOINDER, AND BAD FAITH

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). See Huffman v. Saul Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). In a case with multiple defendants, there must be unanimous consent to removal; any one defendant may spoil removal and keep the entire case in state court. See 28 U.S.C. § 1446(b)(2)(A). Only true defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action,[4] and

---

[4]This view is well-established with regard to plaintiffs defending counterclaims, but is an open question in the Tenth Circuit with regard to third-party plaintiffs. The better view, and the majority view, however, is that "defendants" as used in the removal statute refers to true defendants and not to third-party defendants. As the Court wrote in Wiatt v. State Farm Insurance Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.),

> [w]ith respect to third-party defendants, courts take various views on whether they may remove cases. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d 1237, 1239 (D. Colo. 2006)(citing Monmouth-Ocean Collection Serv., Inc. v. Klor, 46 F. Supp. 2d 385 (D.N.J. 1999)). 28 U.S.C. § 1441(a) permits the removal of a civil action of which the district courts of the United States have original jurisdiction "by the defendant or the defendants." The majority view is that third-party defendants are not "defendants" within the meaning of § 1441(a). See First Nat. Bank of Pulaski v. Curry, 301 F.3d 456, 461-62 (6th Cir. 2002); James Wm. Moore, Moore's Federal Practice § 107.11[1][b][iv] ("[T]hird-party defendants are not *defendants* within the meaning of the removal statute." (emphasis in original)). Other justifications for opposing third-party defendant

_____

removal are that it would force a plaintiff to litigate in a federal court that he did not choose and to which his adversary originally could not have removed, and that allowing removal would expand jurisdiction of federal courts in contravention of the strictly construed statutory limits on the right to removal.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239.  Proponents of third-party removal, however, assert that the term "defendant" under § 1441(a) does not necessarily exclude third-party defendants, who, like other defendants, have been brought into court involuntarily and may have an interest in having a federal forum.

. . . .

Sister districts within the United States Court of Appeals for the Tenth Circuit have routinely held that third-party defendants that a defendant/third-party plaintiff impleads may not remove cases.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239-40; Menninger Clinic Inc. v. Schilly, No. CIV 92-4104, 1992 WL 373927, at *1-2 (D. Kan. Nov. 23, 1992); Radio Shack Franchise Dep't v. Williams, 804 F. Supp. at 152-53; Elkhart Co-op Equity Exch. v. Day, 716 F. Supp. 1384, 1385, 1387 (D. Kan. 1989)(cross-claim).  These cases, however, involved the application of 28 U.S.C. § 1441(c) and not a plaintiff/counter-defendant impleading the third-party defendant under Rule 14(b).  Arguably, some of the rationales for opposing third-party defendant removal may not apply where the plaintiff impleads a third-party defendant, because the plaintiff is the party permissively joining the third-party defendant, and in this scenario, the third-party defendant is more like a traditional defendant -- a party antagonistic to the plaintiff.  See Moore, supra, § 107.1l [1][b][iv] ("The better view . . . is that third-party claims are not removable, because only a party defending against claims asserted by a plaintiff ought to be able to remove.").  At least one court, however, has held that a third-party defendant a plaintiff/counter-defendant impleads cannot remove, because the third-party defendant is not a defendant within the meaning of § 1441.  See Garnas v. Am. Farm Equip. Co., 502 F. Supp. 349, 351 n.7 (D.N.D. 1980)(based on pre-1990 amendment to section 1441(c)).

The Tenth Circuit has not spoken definitively on the propriety of third-party removal.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1240.  It is therefore an open question in this circuit whether a third-party defendant, who the plaintiff impleaded, may remove a case.

560 F. Supp. 2d at 1076 (citations omitted).  The Court ultimately concluded that it "need not resolve this issue, because assuming, without deciding, that a third-party defendant impleaded under rule 14(b) may attempt removal, Allstate has not met its burden to establish the Court's diversity jurisdiction over the claims against it."  560 F. Supp. 2d at 1078.

their consent is not required for removal if all the true defendants consent.  See Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied.  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).  In addition to the requirements of original jurisdiction, § 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court action was brought.  Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished).[5]  As the Tenth Circuit explained:

---

[5]Brazell v. Waite is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Brazell v. Waite, Nerad v. AstraZeneca Pharmaceuticals, Inc., 203 F. App'x 911 (10th Cir. 2006)(unpublished), Oklahoma Farm Bureau Mutual Insurance Co. v. JSSJ Corp., 149 F. App'x 775 (10th Cir. 2005)(unpublished), and Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000)(unpublished), have persuasive value with respect to

> [W]e note that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate requirement that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Brazell v. Waite, 525 F. App'x 878, 884 (alteration in original)(quoting 28 U.S.C. § 1441(b)(2)). The forum-defendant rule applies only to cases removed under diversity jurisdiction; a defendant may remove a case brought against it in its home state on the basis of federal-question jurisdiction.  See 28 U.S.C. § 1441(b).  Last, a case cannot be removed if it began with a nondiverse party or forum-citizen defendant, and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979); Flores-Duenas v. Briones, No. CIV 0660 JB/CG, 2013 WL 6503537, at *12 n.6, *26 (D.N.M. Dec. 1, 2013)(Browning, J.)(describing the operation of the "voluntary-involuntary" rule);[6] or (ii) the removal-spoiling party was fraudulently joined or procedurally misjoined -- doctrines described below.

## 1.    The Presumption Against Removal.

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.  See Laughlin v.

---

material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

[6]The Tenth Circuit explained:

> The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff.  The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

DeBry v. Transamerica Corp., 601 F.2d at 488 (citation omitted).

Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995), abrogated on other grounds by Dart Cherokee

Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014); Fajen v. Found. Reserve Ins. Co., 683

F.2d 331, 333 (10th Cir. 1982); Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v.

Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. Apr. 30,

2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be

resolved in favor of remand.").   The defendant seeking removal must establish that federal court

jurisdiction is proper "by a preponderance of the evidence."   McPhail v. Deere & Co., 529 F.3d

at 953 (10th Cir. 2008).   See Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing

party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right

to removal.").   Because federal courts are courts of limited jurisdiction, the Tenth Circuit has

ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."   Okla.

Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished),

abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547

(2014).   On the other hand, this strict construction and presumption against removal should not

be interpreted as a hostility toward removal cases in the federal courts.   See McEntire v. Kmart

Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *2 (D.N.M. Feb. 9,

2010)(Browning, J.)(citing Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction

does not mean judicial hostility toward removal.   Congress provided for removal, and courts

should not create rules that are at tension with the statute's language in the name of strict

construction.")).

     "It is well-established that statutes conferring jurisdiction upon the federal courts, and

particularly removal statutes, are to be narrowly construed in light of our constitutional role as

limited tribunals."   Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing

Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "All doubts are to be resolved against removal."  Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333.  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

> **2.     Procedural Requirements of Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 WL 3860748, at *5.  A removal which does not comply with the express statutory requirements is defective and must be remanded to state court. See Huffman v. Saul Holdings LP, 194 F.3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which

impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.[7]

After the notice of removal is filed, all state-court proceedings are automatically stayed, and the other defendants in the case -- if not all defendants joined in the removal -- have thirty days to consent to the removal of the action. See 28 U.S.C. § 1446(b)(2). "When a civil action is removed solely under section 1441(a) [the standard removal statute, which excludes multiparty, multiforum jurisdiction], all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). The failure of all defendants to consent to removal will result in remand. The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20. Defendants who have not been served, however, need not join in removal. See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

Section 1447(c) permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has stated:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005)(affirming the Tenth Circuit's affirmance of the Honorable Leroy C. Hansen's, United States District Judge for the District of New Mexico, denial of attorney fees). The Tenth Circuit has limited district courts' discretion to

---

[7]Congress recently clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. See Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 n.5 (D.N.M. Aug. 27, 2012)(Browning, J.)(discussing the Act).

impose costs and fees to those cases in which the removal was objectively unreasonable.  See Garret v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011)("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

      **3.**    **Fraudulent Joinder.**

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction.  See Am. Nat'l Bank & Trust Co. v. BIC Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907 JB/WPL, 2013 WL 5934411, at *14-17 (D.N.M. Sept. 30, 2013)(Browning, J.).  A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule.  "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d 1208, 1214 (D.N.M. 2011) (Browning, J.)(quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent."  Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vazquez, J.).  The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be

such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914).  The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive."  Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished).

The party asserting fraudulent joinder bears the burden of proof.  See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished)("The case law places a heavy burden on the party asserting fraudulent joinder.").  "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty."  Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.).  Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Railroad Co., 378 F.2d 879 (10th Cir. 1967).  The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence."  Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.

Actual fraud -- e.g., a plaintiff colluding with a nondiverse defendant to defeat removal[8] -- suffices to establish fraudulent joinder, but it is not required.  See McLeod v. Cities

---

[8]Collusion might look something like this: a plaintiff names a nondiverse defendant under a dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, see 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before then; and the defendant agrees to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

Serv. Gas Co., 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available."). In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)). In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit found fraudulent joinder because the non-liability of the joined party was "established with complete certainty upon undisputed evidence." 378 F.2d at 882. "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882. In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the plaintiff died when his car collided with a freight train. See 378 F.2d at 881. The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant. See 378 F.2d at 881. It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him." 378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit. In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a

> cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (alteration in original)(quoting Hart v. Bayer Corp., 199 F.3d at 246)(internal quotation marks omitted).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced."  Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Insurance Co., 977 F.2d 848 (3d Cir. 1992), which stated: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  Batoff v. State Farm Ins. Co., 977 F.2d at 853.

In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopted a different articulation of the burden of proof.  The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."  203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)).  The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."  203 F. App'x at 913.

The Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.  The test has been stated by this court in various terms, even within the same opinion.  For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
> > To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d 213, 317 (5th Cir. 1995)).  The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court."  181 F.3d at 699 (emphasis added).  Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law."   16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).  It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved."  Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases  in original).  The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors America, LCC, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.  727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5).  The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims.  See Allen v. Allstate Ins. Co., No. CIV 08-0733, 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief").  This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden.  2013 WL 2398893, at *3 (citing Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(Briscoe, C.J., joined by Seymour & Bacharach, J.J.)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)). In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust Co., a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See Dutcher v. Matheson, 733 F.3d at 983, 987. The plaintiffs alleged that Matheson and his law firm enabled ReconTrust Co. to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank. See 733 F.3d at 983. The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants. See 733 F.3d at 983. The district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract." 733 F.3d at 988. The Tenth Circuit disagreed with that characterization of Utah law, finding instead that, in the case on which the defendants relied, the Utah Supreme Court "has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services." 733 F.3d at 988. In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm. Or even that Matheson and his law firm are not somehow fraudulently joined. But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle."  733 F.3d at 989.  It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from the Smallwood v. Illinois Central Railroad Co. case.  See Dutcher v. Matheson, 733 F.3d at 988 (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.]  If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.  There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants.  Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations omitted)(internal quotation marks omitted).  Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard.  Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will recover against an in-state defendant.  Cf. Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined).  No case sets forth the burden of proof that applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion, but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate.

See, e.g., United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence." (citations omitted)).

The Tenth Circuit may not review a district court's order to remand based on a finding of fraudulent joinder.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order).  The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d at 1242); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").  The defense of limitations is the affirmative defense that is most likely to be established by the uncontroverted facts in the complaint.  See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004).  If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).  The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the

complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV 08-0140 W, 2008 WL 3833472 (W.D. Okla. Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted it, see Anderson Living Trust v. WPX Energy Prod., LLC, No. CIV 12-0040 JB/KBM, 2014 WL 2750652, at *17, *37-39 (D.N.M. May 16, 2014)(Browning, J.).

## NEW MEXICO LAW REGARDING NEGLIGENCE

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages.  See Coffey v. United States, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(Browning)(citing Herrera v. Quality Pontiac, 2003-NMSC-018, 73 P.3d 181, 185-86).  "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person."  Ramirez v. Armstrong, 1983-NMSC-104, 673 P.2d 822, 825, overruled on other grounds by Folz v. State, 1990-NMSC-075, 797 P.2d 246, 249.  Generally, negligence is a fact question for the jury.  See Schear v. Bd. of County Comm'rs, 1984-NMSC-079, 687 P.2d 728, 729.  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant."  Schear v. Bd. of County Comm'rs, 1984-NMSC-079, ¶ 4.  "Whether a duty exists is a question of law for the courts to decide."  Schear v. Bd. of County Comm'rs,

1984-NMSC-079, ¶ 4 (citation omitted).  Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons."  Baxter v. Noce, 1988-NMSC-024, 752 P.2d 240, 243.

New Mexico courts have stated that foreseeability alone does not end the inquiry into whether the defendant owed a duty to the plaintiff.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 8.  The New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9 (internal quotation marks omitted).  To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 7.

"As a general rule, an individual has no duty to protect another from harm."  Grover v. Stechel, 2002-NMCA-049, 45 P.3d 80, 84.  "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection."  Grover v. Stechel, 2002-NMCA-049, ¶ 11. "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [person who has a duty to protect] from being liable for harm caused thereby.'"  Reichert v. Atler, 1994-NMSC-056, 875 P.2d 379, 382.

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in

light of all the surrounding circumstances." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33 (citation omitted)(internal quotation marks omitted). "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case . . . ." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33.

"A proximate cause of an injury is that which in a natural and continuous sequence unbroken by an independent intervening cause produces the injury, and without which the injury would not have occurred." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34 (alterations omitted)(citation omitted)(internal quotation marks omitted). "It need not be the only cause, nor the last nor nearest cause." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34 (alterations omitted)(citation omitted)(internal quotation marks omitted). "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34 (alterations omitted)(citation omitted)(internal quotation marks omitted).

## NEW MEXICO LAW REGARDING NEGLIGENCE PER SE

To establish a negligence per se claim, a plaintiff must prove: (i) that there is a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly; (ii) that the defendant violated the statute; (iii) that the plaintiff must be in the class of persons which the statute seeks to protect; and (iv) that the harm or injury to the plaintiff must generally be that which the Legislature, through the statute, sought to prevent. See Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1204 (D.N.M. 2008)(Browning, J.)(citing Johnstone v. City of Albuquerque, 2006-NMCA-119, ¶ 16, 145 P.3d at 82). To hold a defendant liable under a claim

of negligence per se, the defendant must be shown to have violated a specific statute.  See Parker

v. E. I. DuPont deNemours and Co., Inc., 1995-NMCA-086, 909 P.2d 1, 12.  New Mexico

Uniform Civil Jury Instruction UJI 13-1501 provides:

> There [was a] [were] statute[s] in force in this state, at the time of the occurrence
> in question, which provided that:
>
>> (Quote or paraphrase the applicable part of the statute in question.
>> If more than one statute is in question, list each statute separately)
>
> If you find from the evidence that _____ (party) violated [this] [any one of
> these] statute[s], then _____'s conduct constitutes negligence as a matter of
> law, [unless you further find that such violation was excusable or justified].
>
> [To legally justify or excuse a violation of a statute, the violator must sustain the
> burden of showing that [s]he did that which might reasonably be expected of a
> person of ordinary prudence, acting under similar circumstances, who desired to
> comply with the law.]

N.M.R.A. Civ. UJI 13-1501.   This instruction appears in Chapter Fifteen, Statutes and

Ordinances, not Chapter Sixteen, Tort Law -- Negligence.  The "Directions for Use" for UJI

13-1501 notes that "UJI 13-1503 should be used in addition to this instruction when there is an

issue of proximate cause."  N.M.R.A., Civ. UJI 13-1501, Directions for Use.  N.M.R.A., Civ.

UJI 13-1503 provides:

> Negligence resulting from a violation of a[n] [statute] [or] [ordinance] is no
> different in effect from that resulting from other acts or omissions constituting
> negligence.  In each case the negligence is of no consequence unless it was a
> cause of or contributed to, an injury found by you to have been suffered by the
> plaintiff.

N.M.R.A., Civ. UJI 13-1503.

### NEW MEXICO LAW REGARDING UNINSURED MOTORIST COVERAGE

N.M.S.A. 1978, § 66-5-301(A) and (C), in relevant part, state:

A.       No motor vehicle or automobile liability policy insuring against loss
resulting from liability imposed by law for bodily injury or death suffered
by any person and for injury to or destruction of property of others arising

- 33 -

out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

. . . .

C.      . . . . [T]he named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B of this section; provided that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer.

N.M. Stat. Ann. § 66-5-301(A) & (C).   Regulation 13.12.3.9, which elaborates § 66-5-301, provides: "The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped, or otherwise made a part of the policy of bodily injury and property damage insurance."  N.M. Admin. Code § 13.12.3.9.

The Supreme Court of New Mexico has recognized that § 66-5-301 "embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions," and that the statute is "intended to expand  insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists."  Romero v. Dairyland Ins. Co., 1990-NMSC-111, 803 P.2d 243, 245.   Based upon those observations, the Supreme Court of New Mexico

- 34 -

considers § 66-5-301 a remedial statute and, thus, maintains that it be liberally interpreted to further its purpose, construing exceptions to uninsured motorist coverage strictly to protect the insured.  See Romero v. Dairyland Ins. Co., 1990-NMSC-111, ¶ 6.  The Supreme Court of New Mexico has noted that an insured may reject uninsured motorist coverage, but that such rejection must satisfy the applicable regulations.  See Romero v. Dairyland Ins. Co., 1990-NMSC-111, ¶ 8.  To be valid, a rejection of uninsured motorist coverage must be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the insured's attention that uninsured motorist coverage has been waived. See Romero v. Dairyland Ins. Co., 1990-NMSC-111, ¶ 8.  With respect to the regulation requiring that the rejection be made a part of the policy delivered to the insured, the Supreme Court of New Mexico has stated:

> [Regulation 13.12.3.9] ensure[s] that the insured has affirmative evidence of the extent of coverage.  Upon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home, an individual may well reconsider his or her rejection of uninsured motorist coverage.  Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of the coverage be knowingly and intelligently made.  Any individual rejecting such coverage should remain well informed as to that decision.  We find that the regulation of the superintendent of insurance furthers a legislative purpose to provide for the inclusion of uninsured motorist coverage in every automobile liability policy unless the insured has knowingly and intelligently waived such coverage.

Romero v. Dairyland Ins. Co., 1990-NMSC-111, ¶ 9.  Based upon that assessment of § 66-5-301 and N.M. Admin. Code § 13.12.3.9, the Supreme Court of New Mexico has held that, unless the named insured rejects uninsured motorist coverage in a manner consistent with statutory and administrative requirements, uninsured motorist coverage shall be read into an insured's policy regardless of the parties' intent or the fact that the insured has not paid a premium.  See Kaiser v.

DeCarrera, 1996-NMSC-050, 923 P.2d 588, 590 (quoting  Romero v. Dairyland Ins. Co., 1990-NMSC-111, ¶ 1).  In Kaiser v. DeCarrera, the Supreme Court of New Mexico ruled that a valid rejection of uninsured motorist coverage did not take place and, therefore, read uninsured motorist coverage into the policy.  See 1996-NMSC-050, ¶ 17.  The plaintiff had signed a rejection as part of the application for insurance, and the insurance company sent an amended policy reflecting the rejection to the address on the application that was returned to sender.  See 1996-NMSC-050, ¶ 10.  The Supreme Court of New Mexico found that the plaintiff was never provided a policy with the rejection included and that, as a result, uninsured motorist coverage should be read into the policy.  See 1996-NMSC-050, ¶ 10.

In Montano v. Allstate Indemnity Co., 2004-NMSC-020, 92 P.3d 1255, the Supreme Court of New Mexico addressed the stacking of insurance coverage, noting that its cases had "expressed a public policy in favor of stacking," and that "it is unfair not to allow stacking when multiple premiums are paid or when the policy is otherwise ambiguous."   135 N.M. at 685, 92 P.3d at 1259 (emphasis original).  The Supreme Court of New Mexico indicated that it would take the opportunity to "chart a new course."  Montano v. Allstate Indem. Co., 135 N.M. at 686, 92 P.3d at 1260.  Interpreting § 66-5-301(A) and (C), the Supreme Court of New Mexico held that "an insurance company should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision," and that, with "written waivers, insureds will know exactly what coverage they are receiving and for what cost."  Montano v. Allstate Indem. Co., 135 N.M. at 686-87, 92 P.3d at 1260-61.  The Supreme Court of New Mexico also illustrated its holding:

> [I]n a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three [uninsured or underinsured motorist] coverages and allow the insured to reject, in writing, all or some of the offered coverages.  Thus, hypothetically, in the case of a $25,000 policy, if the premium

for one [uninsured or underinsured motorist] coverage is $65, two coverages is an additional $60, and three coverages $57, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in [uninsured or underinsured motorist] bodily injury coverage.  However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of uninsured motorist coverage; or the insured may reject, in writing, the third available coverage and pay $65 for $25,000 of [uninsured or underinsured motorist] coverage; or the insured may reject all three [uninsured or underinsured motorist] coverages.  In any event, the coverage would not depend on which vehicle, if any, was occupied at the time of the injury.  Thus, the insured's expectations will be clear, and an insured will only receive what he or she paid for.

Montano v. Allstate Indem. Co., 135 N.M. at 687, 92 P.3d at 1261.

In Marckstadt v. Lockheed Martin Corp., 2010-NMSC-001, 147 N.M. 678, 229 P.3d 462, the Supreme Court of New Mexico consolidated cases before it, including a case that the Tenth Circuit certified to it, to answer the question of what is required under § 66-5-301 and N.M.A.C. § 13.12.3.9 to effectively reject uninsured motorist coverage.  See 2010-NMSC-001, ¶ 13.[9]  The Supreme Court of New Mexico held that, "in order for the offer and rejection requirements of Section 66-5-301 to effectuate the policy of expanding [uninsured or underinsured motorist] coverage, the insurer is required to meaningfully offer such coverage and the insured must knowingly and intelligently act to reject it before it can be excluded from a policy."  Marckstadt v. Lockheed Martin Corp., 2010-NMSC-001, ¶ 16 (emphasis original).  It found that "the rejection which the regulation requires to be in writing must be the act of rejection described in

---

[9]The Tenth Circuit certified Federated Serv. Inc. Co. v. Martinez, 300 F. App'x 618 (10th Cir. 2008)(unpublished), and the question: "For a valid rejection of [uninsured or underinsured motorist] coverage under New Mexico law, must that rejection be written, signed by the insured, and attached to the policy."  300 F. App'x at 619.  In the district court, the Honorable James A. Parker, Senior United States District Judge for the District of New Mexico, granted the plaintiffs' motion for summary judgment and found that the defendant's employer had validly rejected uninsured motorist coverage for its employees.  See Federated Serv. Inc. Co. v. Martinez, No. 06-638, 2007 WL 8045157, at *4 (D.N.M. July 14, 2006)(Parker, J.), reversed, 385 F. App'x 845.  After the Supreme Court of New Mexico decided Marckstadt v. Lockheed Martin Corp., the Tenth Circuit reversed Senior Judge Parker's judgment.  See Federated Serv. Ins. Co. v. Martinez, 385 F. App'x 845, 849-50 (10th Cir. 2010).

the statute" and held that an insured must reject uninsured motorist coverage in writing.
Marckstadt v. Lockheed Martin Corp., 2010-NMSC-001, ¶ 22 (emphasis original).   In
Progressive Northwestern Insurance Co. v. Weed Warrior Services, 2010-NMSC-050, 245 P.3d
1209, the Supreme Court of New Mexico answered

> in the affirmative the question, certified to us by the United States Court of
> Appeals for the Tenth Circuit, of whether election by an insured to purchase
> [uninsured or underinsured motorist] coverage in an amount less than the policy
> limits constitutes a rejection of the maximum amount of [uninsured or
> underinsured motorist] coverage permitted under Section 66-5-301.

2010-NMSC-050, ¶ 1.[10]   It found that § 66-5-301 provides that insurers must offer uninsured

motorist coverage, or underinsured motorist coverage, in an amount greater than the minimums

required.   See Progressive N.W. Ins. Co. v. Weed Warrior Servs., 2010-NMSC-050, ¶ 10.   The

Supreme Court of New Mexico held that the "Legislature intended for drivers to have the option

---

[10]Citing the split among the district judges in the United States District Court for the
District of New Mexico, the Tenth Circuit certified, in Progressive Northwestern Ins. Co. v.
Weed Warrior Services, 368 F. App'x 853 (10th Cir. 2010)(unpublished), the question: "Does
the election to take [uninsured or underinsured motorist] coverage for less than the general policy
liability limits constitute a rejection under the New Mexico uninsured motorist statute, N.M. Stat.
§ 66-5-301(A)." 368 F. App'x at 854.   In its certification order, the Tenth Circuit noted that the
Court had held, in Farm Bureau Mutual Insurance Co. v. Jameson, 472 F. Supp. 2d 1272
(D.N.M. 2006)(Browning, J.), that election to take uninsured motorist coverage in an amount
less than the general coverage constitutes a rejection under the New Mexico statute.   See
Progressive N.W. Ins. Co. v. Weed Warrior Servs., 368 F. App'x at 857 (citing Farm Bureau Ins.
Co. v. Jameson, 472 F. Supp. 2d at 1280)(the Tenth Circuit incorrectly stated the Court's
holding, stating that "election to take UM/UIM coverage in amount less than the general
coverage constitutes a rejection under the New Mexico statute," when the Court held that such
election does not constitute a rejection without a signed, written rejection).   In the district court,
in Progressive N.W. Ins. Co. v. Weed Warrior Servs., the Honorable Judith C. Herrera, United
States District Judge for the District of New Mexico, denied both the defendant's and the
plaintiff's motions for summary judgment.   See 588 F. Supp. 2d 1281, 1282 (D.N.M.
2008)(Herrera, J.).   Judge Herrera found that the policy at issue "should be enforced as written,
to provide $100,000 in [uninsured or underinsured motorist] coverage, which is offset by the
$100,000 already received from the tortfeasor, rather than being reformed to provide $1 million
in [uninsured or underinsured motorist] coverage." Progressive N.W. Ins. Co. v. Weed Warrior
Servs., 588 F. Supp. 2d at 1288.   After the Supreme Court of New Mexico reached its decision,
the Tenth Circuit reversed Judge Herrera.   See Progressive N.W. Ins. Co. v. Weed Warrior
Servs., 405 F. App'x 284, 288 (10th Cir. 2010)(unpublished).

of carrying [uninsured or underinsured motorist] coverage equal to their policy limits," and rejected "any suggestion that Section 66-5-301 places a burden on the insured to request [uninsured or underinsured motorist] coverage." Progressive N.W. Ins. Co. v. Weed Warrior Servs., 2010-NMSC-050, ¶¶ 12-13.   It noted that the right to reject coverage cannot be meaningfully exercised without an offer of coverage equal to policy limits, and that it would not "impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of [uninsured or underinsured motorist] coverage desired or required without first receiving information from the insurance company." Progressive N.W. Ins. Co. v. Weed Warrior Servs., 2010-NMSC-050, ¶ 13.

In Jordan v. Allstate Ins. Co., 2010-NMSC-051, 254 P.3d 1214, the Supreme Court of New Mexico granted certiorari in three cases and consolidated them for review.   In all three cases, the insured was injured in an accident involving an uninsured motorist.   See Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶¶ 5-1.   The Supreme Court of New Mexico held that "a rejection of [uninsured or underinsured motorist] coverage equal to the liability limits in an automobile insurance policy must be made in writing and must be made a part of the insurance policy delivered to the insured."   2010-NMSC-051, ¶ 2.   It then further found that:

> In order to honor these requirements effectively, insurers must provide the insured with the premium charges corresponding to each available option for [uninsured or underinsured motorist coverage] so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled.   If an insurer fails to obtain a valid rejection, the policy will be reformed to providing [uninsured or underinsured motorist] coverage equal to the limits of liability.

Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶ 2.   It noted that "insurers continue to offer [uninsured or underinsured motorist] coverage in ways that are not conducive to allowing the insured to make a realistically informed choice," and found it "necessary to prescribe workable

requirements for a valid and meaningful rejection of [uninsured or underinsured motorist] coverage in amounts authorized by statute." Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶ 20. The Supreme Court of New Mexico then provided:

> When issuing an insurance policy, an insurer must inform the insured that he or she is entitled to purchase [uninsured or underinsured motorist] coverage in an amount equal to the policy's liability limits and must also provide the corresponding premium charge for that maximum amount of [uninsured or underinsured motorist] coverage. The premium cost for the minimum amount of [uninsured or underinsured motorist] coverage allowed by Section 66-5-301(A) must also be provided, as well as the relative costs for any other levels of [uninsured or underinsured motorist] coverage offered to the insured. The insured must be informed that he or she has a right to reject [uninsured or underinsured motorist] coverage altogether. Providing the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision . . . .

Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶ 21. It held that, unless these requirements are met, the "policy will be reformed to provide [uninsured or underinsured motorist] coverage equal to the liability limits." Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶ 22. The Supreme Court of New Mexico also found that the rules that it announced should be applied retroactive, because, on balance, "we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law" and retroactive application "will ensure that all insureds will be treated equally." Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶ 29.

In State Farm Mutual Automobile Insurance Co. v. Safeco Insurance Co., 2013-NMSC-006, 298 P.3d 452, the Court of Appeals of New Mexico certified to the Supreme Court of New Mexico the question "whether the primary or the secondary underinsured motorist ("UIM") insurer, if either, should be given the statutory offset for the tortfeasor's liability coverage." 2013-NMSC-006, ¶ 1. The Supreme Court of New Mexico explained the problem through a hypothetical:

> A was a passenger in a vehicle driven by B, which was struck by a vehicle negligently driven by C.  A sustains $500,000 in damages.  C has liability coverage of $100,000.  B has $100,000 in UIM coverage with XYZ Insurance Co. Because A was a passenger in the vehicle insured by XYZ, A is a Class II insured under the XYZ policy, and XYZ is the primary insurer because it insured the vehicle involved in the collision -- the car closest to the risk.  A also has UIM coverage under three other policies, with policy limits of $100,000, $50,000, and $25,000, respectively.  A is a Class I insured under the three policies because A is a named insured in each policy.  Because these policies did not insure the vehicle involved in the collision, the insurers who issued the policies are considered to be secondary insurers.  Therefore, A has $100,000 in primary UIM coverage, plus $175,000 in secondary UIM coverage, for a total of $275,000 in UIM coverage.

2013-NMSC-006, ¶ 2.  In analyzing "whether XYZ Insurance Co. or the secondary insurers should receive an offset for the $100,000 of liability coverage available from C, the tortfeasor," the Supreme Court of New Mexico said "neither the primary nor the secondary insurers are directly awarded the offset because . . . the offset is applied before any UIM insurer is required to pay UIM benefits." 2013-NMSC-006, ¶¶ 3-4.   The Supreme Court of New Mexico explained that, first, "one must determine both the tortfeasor's liability limits and the insured's total UIM coverage, which may include multiple stacked policies."  2013-NMSC-006, ¶ 8.  If the insured's damages exceed the tortfeasor's liability coverage, the insured may pursue a claim against the UIM insurers to recover the difference between his or her UIM coverage and the tortfeasor's liability coverage, or the difference between his or her damages and the tortfeasor's liability coverage, whichever is less.  See 2013-NMSC-006, ¶¶ 9, 15.  The primary insurer must pay its policy limits before the secondary insurers pay in proportion to their respective policy limits.  See 2013-NMSC-006, ¶¶ 4, 11.  Under the hypothetical, the difference between A's UIM coverage and C's liability coverage -- $175,000.00 -- is less than the difference between A's damages and C's liability coverage -- $400,000.00 -- and, thus, A may pursue from the UIM insurers $175,000.00.  See 2013-NMSC-006, ¶ 18.

> The primary UIM insurer pays its entire $100,000, leaving the secondary UIM insurers obligated to pay a prorated portion of $75,000.  One secondary insurer pays $42,857.14, which is 4/7ths (100,000/175,000) of $75,000; one pays $21,428.57, which is 2/7ths (50,000/175,000) of $75,000; and the remaining secondary insurer pays $10,714.29, which is 1/7th (25,000/175,000) of $75,000. In no case will the insured receive more than the limits of the insured's UIM coverage minus the tortfeasor's liability payment or more than the insured's damages minus the tortfeasor's liability payment, whichever is less.

2013-NMSC-006, ¶ 19.  Because the tortfeasor's liability limits are taken into consideration in what the UIM insurers must pay the injured insured, there is no "offset" to award: the injured insured will not receive more than he or she is permitted under the UIM statute.  2013-NMSC-006, ¶ 15.

## ANALYSIS

The Court will grant the Motion.  The Grahams have adequately pled a cause of action against Troncoso, and the Grahams have not fraudulently joined Troncoso in this action. Because the Grahams and Troncoso are New Mexico citizens, the Court lacks diversity jurisdiction and will remand this case to state court.  Additionally, the Court will award the Grahams attorney fees and costs pursuant to 28 U.S.C. § 1447(c).

## I.   THE GRAHAMS ADEQUATELY PLEAD A CAUSE OF ACTION AGAINST TRONCOSO.

The Grahams adequately plead a cause of action against Troncoso.  The Grahams make the following allegations concerning Troncoso:

### GENERAL ALLEGATIONS

. . . .

6.      On or about July 26, 2013, in Dona Ana County, New Mexico, Defendant Troncoso negligently and carelessly operated a 1998 Ford in such a manner that it collided with the 2012 Chevy being operated by Mr. Graham.  Mrs. Graham was a passenger in the 2012 Chevy.

7.      . . .   The acts of Defendant Troncoso was [sic] the direct and proximate cause of the subject collision and Plaintiffs' resulting injuries and damages.

8.      To the extent that Defendant Troncoso violated applicable statutes and/or regulations, Troncoso is to be considered negligent *per se* and strictly liable to the Plaintiffs.

. . . .

### PRAYER

WHEREFORE, the Plaintiffs respectfully prays [sic] this Court for relief as follows:

. . . .

(b)     For judgment as against Defendant Troncoso in an amount exceeding the minimum jurisdictional limits of this Court, including both compensatory and punitive damages, together with all available interest at the maximum legal rate . . . .

Complaint ¶¶ 6-8, at 2; <u>id.</u> at 7.  These allegations are sufficient to state a claim against Troncoso.

Under rule 8(a) of the Federal Rules of Civil Procedure, the Plaintiffs have adequately pled a short and plain statement that shows that they are entitled to relief -- that Troncoso negligently drove his 1998 Ford so that it collided with the Plaintiffs' vehicle, causing them injuries.  <u>See</u> Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").  They also state the relief they are seeking from Troncoso -- a judgment consisting of compensatory and punitive damages.  <u>See</u> Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief.").  The Grahams' allegations are not mere conclusory allegations or threadbare recitations of the elements of negligence.  <u>Cf.</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. at 663-64.  The Complaint, thus, adequately states a claim against Troncoso under federal pleading standards.

The Grahams have also adequately alleged a cause of action against Troncoso under New

Mexico's fair notice pleading standard.  N.M. Rule Ann. 1-008 provides:

> **A.**     **Claims for Relief.**  A pleading which sets forth a claim for relief, whether
> an original claim, counterclaim, cross-claim, or third-party claim shall
> contain:
>
> > (1)     proper allegations of venue, provided the name of the
> > county stated in the complaint shall be taken to be the
> > venue intended by the plaintiff and it shall not be necessary
> > to state a venue in the body of the complaint or in any
> > subsequent pleading;
>
> > (2)     a short and plain statement of the claim showing that the
> > pleader is entitled to relief; and
>
> > (3)     a demand for judgment for the relief to which the pleader
> > claims to be entitled to receive.  Relief in the alternative or
> > of several different types may be demanded.  Unless it is a
> > necessary allegation of the complaint, the complaint shall
> > not contain an allegation for damages in any specific
> > monetary amount.

N.M. Rule Ann. 1-008(A).  The policy behind the fair notice pleading standard "is to alert

potential parties to pending lawsuits, and general allegations of conduct are sufficient."  Zamora

v. St. Vincent Hosp., 2014-NMSC-035, ¶ 16, 335 P.3d 1243, 1248 (citation omitted)(internal

quotation mark omitted).  Similar to the federal pleading standards, the Grahams adequately state

a claim against Troncoso under the New Mexico pleading standards.  The Grahams allege that

Troncoso drove negligently and is strictly liable under a negligent per se theory.  See Complaint

¶¶ 6-8, at 2.  They also demand a judgment against Troncoso for compensatory and punitive

damages.  See Complaint at 7.  Finally, the facts alleged are sufficient to alert Troncoso of the

pending lawsuit and general allegations against her.  See Zamora v. St. Vincent Hosp.,

2014-NMSC-035, at ¶ 16.  The Grahams have, accordingly, sufficiently stated a claim against

Troncoso under New Mexico's pleading standards.

## II.   **THE GRAHAMS DID NOT FRAUDULENTLY JOIN TRONCOSO.**

The Grahams did not fraudulently join Troncoso.  USAA Casualty's main argument concerning fraudulent joinder is that the Grahams have not alleged a cause of action against Troncoso.  USAA Casualty cites to two cases that it contends are similar and that show that the Grahams have not alleged a cause of action against Troncoso.  The Court has already concluded that the Grahams adequately alleged a cause of action against Troncoso, and the cases to which USAA Casualty cite are inapplicable.

The first case is Lloyd v. Travelers Property Casualty Insurance Co.  There, the plaintiff filed suit against his insurance company and six other defendants who were involved in an automobile accident, including the other driver and a construction company, which the plaintiff alleged may have caused the accident by positioning its equipment in such a manner that it blocked drivers' views of oncoming traffic.  See 699 F. Supp. 2d at 813.  In the complaint, the plaintiff sought a declaratory judgment that his insurance policy covered his household vehicles in the amount of $250,000.00 per vehicle.  See 699 F. Supp. 2d at 813.  The insurance company removed the case to federal court, and the plaintiff sought to remand it back to state court.  See 699 F. Supp. 2d at 815.  The Honorable Thomas Selby Ellis III, United States District Judge for the Eastern District of Virginia, concluded that, because the case was a declaratory judgment action concerning the terms of the plaintiff's insurance company, the other plaintiffs were mere nominal parties without a stake in the outcome of the case and whose citizenship should not be considered in determining if the court had diversity jurisdiction.  See 699 F. Supp. 2d at 816.  Moreover, the plaintiff conceded that he did not state a claim against the other defendants and that the other defendants were included in the case in the event that the insurance company wanted to bring a subsequent subrogation action against them.  See 699 F. Supp. 2d at 816.

The second case is <u>Trigo v. Travelers Commercial Insurance Co.</u>   There, the plaintiff filed suit against her insurance company and against another driver who caused an automobile accident and who was a citizen of the same state as the plaintiff.  <u>See</u> 2010 WL 3521759, at *1. The plaintiff titled her complaint "Complaint for Declaratory Judgment" and sought a "judgment against the defendants declaring that, under the" insurance policy issued to the plaintiff, the insurance company provide the plaintiff "with underinsured motorist coverage of $200,000 for his claims against" the other driver.  2010 WL 3521759, at *2.  The insurance company removed the case to federal court, and the plaintiff moved to remand.  <u>See</u> 2010 WL 3521759, at *2.  The Honorable Norman K. Moon, United States District Judge for the Western District of Virginia, concluded that the court had diversity jurisdiction, because the only claim in the case was for a declaratory judgment concerning the plaintiff's insurance policy between the insurance company and the plaintiff, and the other driver was not privy to that policy.  <u>See</u> 2010 WL 3521759, at *4-5.

Neither of these cases applies here.  While the Grahams are seeking declaratory judgment concerning their rights under the insurance policy, they are also seeking a monetary judgment against Troncoso.  In <u>Trigo v. Travelers Commercial Insurance Co.</u> and <u>Lloyd v. Travelers Property Casualty Insurance Co.</u> the plaintiffs sought only a declaratory judgment without requesting any monetary relief against the other driver.  The only issues to be resolved in those cases were the rights and obligations between the plaintiffs and their insurance companies under the insurance policies.  Those issues did not involve the other drivers, and, thus, the other drivers did not have a stake in the litigation.  Here, there is more to be resolved than USAA Casualty's obligations and rights under the Grahams' insurance policy.  The Grahams are seeking a money

judgment against Troncoso, which means Troncoso has a direct, tangible stake in the outcome of this case.  She is not a mere nominal party.

The driver of a vehicle that causes an accident is often named as a defendant.  After all, it is the driver, not the insurance company, that caused the accident.  There are a lot of reasons to have that person in the case.  If the driver is insured, this pleading may kick in an uninsured or underinsured policy.  The defendant may have assets, even if she is uninsured.  The Court cannot say that the Grahams will not collect anything, or seek to collect anything, from Troncoso.  The Grahams have not indicated that they intend to drop Troncoso.  However, the Grahams have a claim against Troncoso, and there is nothing in the record that they do not intend to pursue their claim against Troncoso.

Because the Grahams have sufficiently alleged a cause of action against Troncoso, and because Troncoso has a stake in the outcome of this case, the only remaining questions are whether the Plaintiffs added Troncoso as a defendant because of actual fraud, see McLeod v. Cities Serv. Gas Co., 233 F.2d at 246 ("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available."), or whether no cause of action exists against Troncoso, even though one is properly pled, see Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.  USAA Casualty has not argued that there is actual fraud or that the Grahams have no cause of action against Troncoso -- it only argued that the Grahams did not allege a cause of action.  It is hard to imagine that a plaintiff does not have a claim against the negligent driver of the vehicle that hit him or her.  As the party asserting fraudulent joinder, USAA Casualty has the burden of proving it.  See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1.  USAA Casualty has not presented any evidence of actual fraud, and, based on the record, the Court finds none.  Similarly, USAA

Casualty has not alleged that the Grahams do not have a cause of action against Troncoso despite pleading one.  Because there is no evidence showing that the Grahams have no potential cause of action, the Court concludes that USAA Casualty fails to demonstrate that Troncoso has been fraudulently joined.

## III.    THE COURT WILL AWARD THE GRAHAMS ATTORNEY FEES AND COSTS.

The Court will award the Grahams attorney fees and costs.  28 U.S.C. § 1447(c) permits the Court to award "just costs and any expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "The Supreme Court has limited district courts' discretion to impose costs and fees to those cases in which the removal was objectively unreasonable."  Aguayo v. AMCO Ins. Co., No. CIV 14-0400 JB/KBM, 2014 WL 5859098, at *52 (D.N.M. Oct. 31, 2014)(Browning, J.)(citing Garrett v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011)("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for removal.")).  USAA Casualty's removal was objectively unreasonable.  In arguing that the Grahams fraudulently joined Troncoso in this action, USAA Casualty cites two cases that it contends are similar.  Trigo v. Travelers Commercial Insurance Co. and Lloyd v. Travelers Property Casualty Insurance Co. are, however, distinguishable from the present case, and a cursory reading of the Complaint reveals that both cases are inapposite.  The only relief that the plaintiffs in those cases sought was a declaratory judgment against the diverse insurance company.  In their prayers for relief, the plaintiffs did not request a judgment against the non-diverse tortfeasors.

Here, the Grahams expressly request a monetary judgment against Troncoso.  The Complaint states:

> WHEREFORE, the Plaintiffs respectfully prays [sic] this Court for relief as
> follows:
>
> . . . .
>
> (b)     For judgment as against Defendant Troncoso in an amount exceeding the
>         minimum jurisdictional limits of this Court, including both compensatory
>         and punitive damages, together with all available interest at the maximum
>         legal rate . . . .

Complaint at 7.   The Grahams are not seeking only a declaratory judgment against USAA

Casualty.   The Complaint clearly states that they are also seeking a monetary judgment against

Troncoso.   It was objectively unreasonable for USAA Casualty to conclude that the Grahams do

not assert any claims of relief against Troncoso.

USAA Casualty may argue that the Complaint's headings made it reasonable to believe

that the Grahams did not assert a claim against Troncoso.   In the Complaint, the Grahams assert,

in the body of the Complaint, specified claims with individualized headings against only USAA

Casualty.   Their claims against Troncoso are found in a section titled "General Allegations" and

in the prayer.   Complaint ¶¶ 6-8, at 2; id. at 7.   USAA Casualty does not argue, however, that the

Grahams were required to use an individualized heading for each claim asserted in the

Complaint.   Indeed, neither New Mexico nor federal law imposes such a requirement.   See, e.g.,

Phan v. Best Foods Int. Inc., No. CIV 14-0888 RS, 2014 WL 3749988, *6 (N.D. Cal. July 29,

2014)(Seeborg, J.)(noting that "a plaintiff is not necessarily required to parse out each of his

claims with a separate heading the complaint"); Golden Golf Lightning, Inc. v. Greenwich

Indus., L.P., No. CIV 07-1086, 2010 WL 2523443, at *2 (N.D. Ill. June 18, 2010)

(Andersen, J.)("While this Court greatly appreciates that many complaints clearly delineate

separate claims with separate headings, there is no explicit rule requiring Plaintiffs to use such

headings."); Dion LLC v. Infotek Wireless, Inc., No. CIV 07-1431 SBA, 2007 WL 3231738,

at *4 (N.D. Cal. Oct. 30, 2007)(Armstrong, J.)(stating that, while "separate headings or counts in

the complaint may have made the pleading easier to read," such headings were unnecessary when the complaint contains "affirmative statements sufficient to establish a basis for judgment against the defendant" (internal quotation marks omitted)).[11]  To believe that the Grahams -- in contradiction to New Mexico and federal law -- were required to state in the Complaint individualized claims under separate headings is objectively unreasonable.

The Grahams' Complaint clearly states a claim against a non-diverse party -- Troncoso. The cases on which USAA Casualty rely are so distinguishable that it was objectively unreasonable for USAA Casualty to rely on them to conclude that the Grahams did not assert a claim against Troncoso.  Troncoso was the driver that committed the negligence; while the Court is slow to grant fees and costs after the Honorable John G. Roberts, Chief Justice of the United States', opinion in Martin v. Franklin Capital Corp., if the Court does not grant fees and costs in this case, it would essentially be writing 28 U.S.C. § 1447(c) out of the United States Code,

---

[11]While the Court has been unable to find a New Mexico state court that has stated that a plaintiff is not required to list each claim under a separate heading in the complaint, N.M. Rule Ann. 1-008 contains no such requirement.  Additionally, New Mexico courts apply their pleading standards in a liberal manner that focuses on the merits of the pleadings and not the form.

> New Mexico adheres to the broad purposes of the Rules of Civil Procedure and construes the rules liberally, particularly as they apply to pleading.  The general policy of the Rules requires that an adjudication on the merits rather than technicalities of procedure and form shall determine the rights of the litigants.
>
> The rules are to be construed and administered to secure the just, speedy and inexpensive determination of every action.  All pleadings shall be so construed as to do substantial justice.

Martinez v. Segovia, 2003-NMCA-023, ¶¶ 10-11, 62 P.3d 331, 334 (citations omitted)(internal quotation marks omitted).  Because N.M. Rule Ann. 1-008 does not require each claim to have a separate heading, and because New Mexico courts favor substance over form when it comes to pleadings, the Court concludes that, like the Federal Rules of Civil Procedure, the New Mexico Rules of Civil Procedure do not require a plaintiff to state each individual claim under a separate heading.  Indeed, the New Mexico pleading rules are considered even more liberal than the federal rules, especially after Iqbal and Twombly, which the New Mexico courts have not adopted.

something that Congress, not the federal courts, should do, if it is to be done at all.  Therefore, pursuant to 28 U.S.C. § 1447(c), the Court will order USAA Casualty to pay the Grahams' costs and attorney fees that they incurred as a result of USAA Casualty removing this case to federal court.

**IT IS ORDERED** that: (i) the Plaintiffs' Motion to Remand to State Court, filed September 3, 2014 (Doc. 5), is granted; (ii) this case is remanded to Doña Ana County, Third Judicial District Court, State of New Mexico; and (iii) Plaintiffs Elfigo Graham's and Lisa Graham's request for attorney fees and court costs is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties:*

Bryan L. Williams
Ron Bell Injury Lawyers
Albuquerque, New Mexico

 *Attorneys for the Plaintiffs*

Xochil Troncoso
Las Cruces, New Mexico

 *Defendant pro se*

Charles J. Vigil
Leslie McCarthy Apodaca
Rodey, Dickason, Sloan, Akin & Robb
Albuquerque, New Mexico

 *Attorneys for Defendant USAA Casualty Insurance Company*